| | | |
|---|---|---|
| LAUREN B. PENA, individually and on behalf of her minor child, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:26-cv-00132-RP |
| PATHWAYS AT CHALMERS SOUTH, CARLETON LIVING / CARLETON MANAGEMENT SERIVCES, MICHELLE SMITH, in her individual and official capacity, SHARON CARPENTER, in her individual and official capacity, HOUSING AUTHORITY OF THE CITY OF AUSTIN (HACA), and CHRIS HEALE, in his individual and official capacity, | § § § § § § § § § § § | |
| Defendants. | § § | |

## DEFENDANT CARLETON LIVING/CARLETON MANAGEMENT SERVICES' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

COMES NOW, Carleton Living/Carleton Management Services, herein after referred to as "Carleton," and files its Motion to Dismiss Plaintiff's Civil Rights Complaint (Dkt. 1) Under Rule of Civil Procedure 12(b)(6) and 12(b)(1), and would respectfully show unto the Court that Plaintiff's Complaint should be dismissed because Plaintiff failed to state a claim upon which relief can be granted.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS                                                        2

TABLE OF AUTHORITIES                                                     3

SUMMARY OF ARGUMENT                                                      5

FACTUAL AND PROCEDURAL BACKGROUND                                        6

ARGUMENT AND AUTHORITIES                                                 7

      A.      Standard of Review Pursuant to Rule 12(b)(6)         7

      B.      Claims Pursuant to the Fair Housing Act
            and Americans with Disabilities Act                 8

      C.      Texas Property Code Retaliation Claims              12

      D.      Discussion                                          12

CONCLUSION                                                              20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................. 8

*Bryant Woods Inn v. Howard County*, 124 F.3d 597 (4th Cir. 1997) ......................................................... 9

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022)................................................................ 17

*Cinnamon Hills Youth Crisis Ctr. v. Saint George City*, 685 F.3d 917 (10th Cir. 2012) ...................... 9-10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................................. 16, 17

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ................................................................................... 7-8

*Doe v. Spillman Ranch Homes, LP*, 2025 U.S. Dist. LEXIS 112710 (W.D. Tex. 2025)........................ 9, 13

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008)................................................................ 8

*Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175 (5th Cir. 1996)............................................................. 9

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) .......................................................... 7

*Jin Choi v. Univ. of Tex. Health Sci. Ctr. of San Antonio*, 633 F. App'x 214 (5th Cir. 2015) (per curiam) (unpublished) ......................................................................................................................................... 10

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)............................. 7

*Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242 (5th Cir. 2013) .............................................................. 10

*Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448 (5th Cir. 2018).................. 9, 10, 11

*Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) ...................................................... 10

*Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781 (6th Cir. 1996).............................................. 10

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100 (3d Cir. 2018) ........................................ 9, 10

*Watsky v. Williamson Cnty.*, No. 21-CV-374, U.S. Dist. LEXIS 123730, 2024 WL 3433705 (W.D. Tex. July 15, 2024)................................................................................................................................... 7, 8

*Women's Elevated Sober Living LLC v. City of Plano*, 86 F.4th 1108 (5th Cir. 2023).............. 9, 10, 13, 14

## STATUTES

29 U.S.C. § 794(a) .................................................................................................................................. 11

42 U.S.C. § 3602(h) ............................................................................................ 9

42 U.S.C. § 3604(f)(1) ........................................................................................ 8

42 U.S.C. § 3604(f)(1)(A) .............................................................................. 13, 16

42 U.S.C. § 3604(f)(3)(B) .................................................................. 9, 10, 11, 14

42 U.S.C. § 12131(2) ...................................................................................... 11, 14

42 U.S.C. § 12133 ............................................................................................ 11

TEX. PROP. CODE § 92.001(2) .......................................................................... 12, 19

TEX. PROP. CODE § 92.331(a) .......................................................................... 12, 19

## RULES AND SECONDARY MATERIALS

FED. R. CIV. P. 8(a) ............................................................................................ 12

FED. R. CIV. P. 12(b)(1) ...................................................................................... 14

FED. R. CIV. P. 12(b)(6) ...................................................................................... 7

10 Oxford English Dictionary 275-76 (2d ed. 1989) ...................................... 10

## SUMMARY OF ARGUMENT

1.      Plaintiff has failed to state a claim against Carleton. Plaintiff has alleged she and her minor child are disabled, made requests for reasonable accommodations, but that Carleton did not make a reasonable accommodation. However, Plaintiff failed to plead facts that would establish she or her minor child are disabled, failed to identify any reasonable accommodation she claims to have requested, and failed to plead conduct that Carleton failed to make an accommodation.

2.      Additionally, Plaintiff's pleading is devoid of any factual statements as to how Carleton has either discriminated against Plaintiff or her minor children, or how Carleton failed to provide access to services, programs or activities that would constitute actionable conduct under federal regulations. Instead, Plaintiff makes conclusory assertions with references to provisions of federal law, without any explanation from which an actionable claim could be inferred from the pleading or attachments. Carleton objects to Plaintiff's Complaint based on conclusory claims.

3.      Plaintiff's Complaint fails to provide Carleton with fair notice of her claims as well as fails to establish that her claims are plausible and that she is entitled to relief. And finally, Plaintiff seeks injunctive relief on future claims not properly pleaded, but even if properly pleaded, she would lack Article III standing because she will not qualify as having a sufficient future possessory interest as a tenant. Consequently, the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

4.      Per the attachments to Plaintiff's Complaint, Defendant Carleton Living / Carleton Management Services ("Carleton") is the manager of the apartment complex at which Plaintiff resides.[1]

5.      Per Plaintiff's Complaint (via an attachment thereto), on or about September 8, 2025, Plaintiff emailed Carleton and the Housing Authority of the City of Austin ("HACA") demanding that Carleton "immediately contact the Housing Authority and determine how you intend to relocate my family to the safe housing I am guaranteed under federal law…."[2]

6.      Plaintiff asserts, per attachments to her Complaint, that from September 8, 2025, through the filing of her suit, Plaintiff made repeated complaints about the safety conditions at the apartment complex, with her focus being gates in disrepair, homeless people and drug users present on the property, and the elevator periodically breaking down.[3]

7.      Per the Complaint, Plaintiff filled out a moving packet with HACA in September, 2025, presumably to be relocated to a new apartment complex.[4]  But by January 15, 2026, HACA requested a new one so that her move to a new apartment complex could be processed and approved.[5]

8.      Plaintiff further asserts that, on or about January 15, 2026, Carleton emailed Plaintiff confirming a recent in-person communication between Plaintiff and Carleton, in which Plaintiff expressed she was not happy at the apartment complex, did not feel safe and was in the

---

[1] *See* Plaintiff's Civil Rights Complaint, pg. 47.  In the email attached to Plaintiff's pleading, Plaintiff addresses her email to Carleton (and others) and demands that "you, as property manager…" relocate Plaintiff to new housing.  One inference to draw from such attachment is that Carleton is the manager of the apartment complex at which Plaintiff resides.
[2] *See* Plaintiff's Civil Rights Complaint, pg. 47, Exhibit 10(c).
[3] *See e.g.* Plaintiff's Civil Rights Complaint, pgs. 24, 33, 37 – 39, 43.
[4] *See* Plaintiff's Civil Rights Complaint, pg. 18.
[5] *Id.*

process of securing a residence in another place.[6] Carleton non-renewed Plaintiff's lease in order to assist in facilitating her request to move out of the complex.[7]

9. On or about January 20, 2026, Plaintiff filed this lawsuit against Carleton, and others asserting claims for violations of the Fair Housing Act, Americans with Disabilities Act and the Texas Property Code.

10. Plaintiff asserts that she made reasonable accommodation requests, but in response was non-renewed.[8] Plaintiff claims her non-renewal was a retaliatory act in violation of the Texas Property Code.[9]

## AUTHORITY AND ARGUMENT

### A. Standard of Review Pursuant to Rule 12(b)(6)

11. Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Watsky v. Williamson Cnty.*, No. 21-CV-374, U.S. Dist. LEXIS 123730, 2024 WL 3433705, at * 6 (W.D. Tex. July 15, 2024); citing FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Watsky*, U.S. Dist. LEXIS 123730 at *7; citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

12. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Watsky*, U.S. Dist. LEXIS 123730 at *7 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.

---

[6] *See* Plaintiff's Civil Rights Complaint, pgs. 16 – 17.
[7] *See* Plaintiff's Civil Rights Complaint, pg. 14.
[8] *See* Plaintiff's Civil Rights Complaint, pg. 2, ¶¶ 26 – 27.
[9] *See* Plaintiff's Civil Rights Complaint, pg. 2, ¶ 28.

2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Watsky*, U.S. Dist. LEXIS 123730 at *7 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570)).

13.     A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

14.     A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Claims Pursuant to the Fair Housing Act and Americans with Disabilities Act**

**i.     Fair Housing Act Claims**

15.     Pursuant to 42 U.S.C. § 3604(f), it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1).

16. Discrimination includes "a refusal to make reasonable accommodations in rules [or] policies . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).

17. In a failure-to-accommodate claim, a plaintiff must show that: (1) she has a disability within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to know of the disability; (3) the accommodation is necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the requested accommodation.. *See Doe v. Spillman Ranch Homes, LP*, 2025 U.S. Dist. LEXIS 112710, * 5 (W.D. Tex. 2025); see also *Women's Elevated Sober Living LLC v. City of Plano*, 86 F.4th 1108, 1112 (5th Cir. 2023) (citing *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018)). Importantly, the plaintiff bears the burden of proving a violation of the FHA. *See Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996).

18. To prove that an accommodation request is necessary, courts require that a plaintiff prove that the requested accommodation makes the home either "financially viable" or "therapeutically meaningful." *See Women's Elevated Sober Living LLC*, 86 F.4th at 1112 (citing *Bryant Woods Inn v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997)). Some courts have determined that necessity must be considered (1) in light of the statutory provision's language; (2) in accord with the purpose of the FHA and ADA, to ameliorate the plaintiff's particular disability; and (3) in the light of "proposed alternatives." *Women's Elevated Sober Living LLC*, 86 F.4th at 1112 (citing *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018)).

19. However, a requested accommodation that is preferable to an alternative is not sufficient; it must be essential. *See Cinnamon Hills Youth Crisis Ctr. v. Saint George City*, 685

F.3d 917, 923 (10th Cir. 2012). Courts must evaluate necessity considering its definition, that is, something "[i]ndispensable, requisite, essential, needful; that cannot be done without, or absolutely required." *Women's Elevated Sober Living LLC*, 86 F.4th at 1112 (citing *Vorchheimer*, 903 F.3d at 105 (alteration in original) (internal quotation marks omitted) (quoting 10 Oxford English Dictionary 275-76 (2d ed. 1989)).

20.     A requested accommodation must directly ameliorate the effect of the plaintiffs' disabilities, such that the request achieves effective amelioration of the affliction. *See id.*; 42 U.S.C. § 3604(f)(3)(B). Without the requested accommodation, the ameliorative benefit provided must be so insignificant that it deprives persons with disabilities from the opportunity to use and enjoy the dwelling of their choice as compared to those without disabilities. *See Women's Elevated Sober Living LLC*, 86 F.4th at 1112; *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008); *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996).

## ii.     Americans with Disabilities Act Claims

21.     To prove its reasonable accommodation claims under the ADA, a plaintiff is required to show by a preponderance of the evidence that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the defendant; and (3) the defendant failed to make reasonable accommodations for such known limitations. *See Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018) (citing *Jin Choi v. Univ. of Tex. Health Sci. Ctr. of San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (per curiam) (unpublished) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)); *see also* 42 U.S.C. § 12131(2).

22.     "Reasonable accommodation claims under the FHA and ADA both require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have

usage and enjoyment in a facility equivalent to individuals who are not disabled." *Providence Behavioral Health*, 902 F.3d at 459.

23.     However, the 5th Circuit determined in the Providence case that requests for accommodations in the form of "providing water, drainage, and septic services" had no relation to accommodating disabilities for prospective patients of a care facility. *Id.* Instead, the court upheld the district court's determination that "[i]rrespective of whether the [Providence Health facility] was to be developed into a psychiatric hospital, an office building, or a condo development, it would need water and wastewater services . . . The need for water and wastewater is not unique to the fact that the [Providence Health facility] will be a psychiatric facility." *Id.* In other words, the failure to provide sewage and water services to the Providence Health facility did not create a situation where disabled individuals had an unequal ability to use and enjoy the facility compared to individuals who do not have a disability. *Id.*; citing 42 U.S.C. § 3604(f)(3)(B); 42 U.S.C. § 12131(2). It therefore follows that such types of requests are not "reasonable" accommodation requests.

24.     "The remedies, procedures, and rights set forth in section 794a of title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133. "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

**C.     Texas Property Code Retaliation Claims**

25.     Plaintiff asserts a claim for retaliation against Defendant pursuant to Section 92.331(a) of the Texas Property Code.  "A landlord may not retaliate against a tenant by taking an action described in Subsection (b)" of Chapter 92.331 of the Texas Property Code.  *See* TEX. PROP. CODE § 92.331(a) (enumerating conduct to which a landlord may not retaliate).  The Texas Property Code defines a landlord as "the owner, lessor, or sub-lessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sub-lessor in an oral or written lease."  TEX. PROP. CODE § 92.001(2).

**D.     Discussion**

26.     Plaintiff has failed to plead claims on which relief can be granted.  In fact, Plaintiff has done little more than make conclusory assertions of violations of various federal and state statutes, with providing the necessary information for the Court to infer that Carleton has engaged in the misconduct alleged.  Carleton objects to such conclusory statements in violation of Rule 8(a) of the Federal Rules of Civil Procedure.

> **i.     Plaintiff does not clearly plead facts and the elements to establish her FHA and ADA claims, does not plead facts that support she has requested a reasonable accommodation, and does not explain how any failure to make general repairs constitutes a failure to properly accommodate under federal regulations.**

27.     The initial problem with Plaintiff's claims is that, by Plaintiff's own pleading and the attachments thereto, Plaintiff no longer has possessory or future possessory rights in the Property.  She has been non-renewed and her possessory rights expire on March 31, 2026.[10]  In fact, the non-renewal was prompted at Plaintiff's demand,[11] as she advised Carleton she wanted

---

[10] *See* Plaintiff's Civil Rights Complaint, pg. 14.
[11] *See* Plaintiff's Civil Rights Complaint, pg. 47.

out of the Property, and Plaintiff non-renewed her to accommodate her and her ability to transfer her housing (and housing assistance) to a new complex.[12]

28.     Putting aside the non-renewal, which implicates that she has no standing to bring her claims (*see* 42 U.S.C. § 3604(f)(1)(A) (Plaintiff's standing to assert claims as a renter no longer applies as any harm is not redressable by Carleton)), in order to state a claim, Plaintiff must first allege that she (or her minor children) suffer from a disability and requested a reasonable accommodation from Carleton.  While Plaintiff claims she and a minor child are disabled, she does not clearly state any such disability in her pleading.  While she may generally plead that they are disabled under the law, a reasonable accommodation request must be construed in light of the disability to determine whether such accommodation would be necessary or reasonable under the circumstances.  *See Women's Elevated Sober Living LLC*, 86 F.4th at 1112.  For example, a disability involving someone who is visually impaired might have a bearing on whether an accommodation request relating to removal of physical barriers are necessary and reasonable.

29.     The attachments to Plaintiff's pleading do not clearly indicate Plaintiff's disability. In one of the attachments to her pleading, Plaintiff claims her disability is PTSD,[13] while in another email to HACA, she states that asthma is her disability and that her daughter has rheumatoid arthritis.[14]  Assuming such are the disabilities in question, none of them are open and obvious to establish that Defendants are aware of any such disabilities or properly placed on notice.  *See e.g. Doe v. Spillman Ranch Homes, LP*, 2025 U.S. Dist. LEXIS 112710, * 5 (W.D. Tex. 2025) (one of the elements to establish a failure to accommodate claim requires proof that the disability was

---

[12] *See* Plaintiff's Civil Rights Complaint, pgs. 16-18, 24, 34, 37, 39, 43, 47.
[13] *See* Plaintiff's Civil Rights Complaint, pg. 39.
[14] *See* Plaintiff's Civil Rights Complaint, pg. 32.

known or should have been known by the defendant).  As for her email to HACA, Carleton was not a participant in the email exchange.[15]

30.     Furthermore, Plaintiff does not include in her pleading what reasonable accommodation she claims to have requested from Carleton.  And the attachments to her pleading do not clarify matters.  In one attachment to her pleading, Plaintiff's accommodation requests appears to be a request that the gates to the complex be repaired, that the building be secured, and to "stop the drug activity and unauthorized entry occurring within the property."[16]  In another email, Plaintiff's accommodation requests appears to be a complaint that the elevator is out of repair.[17]

31.     But if the accommodations that Plaintiff seeks are repairs to the apartment complex gates, entryways, and elevators, Plaintiff has not requested accommodations that directly ameliorate the effect of Plaintiff's, or her minor child's, disabilities.  *See Women's Elevated Sober Living LLC*, 86 F.4th at 1112; 42 U.S.C. § 3604(f)(3)(B); 42 U.S.C. § 12131(2).  A request for repairs to an apartment complex's entry gate, securing a building, and repairing an elevator are general repairs from which any tenant, whether disabled or not, would benefit. Certainly, it is not clear from Plaintiff's Complaint how repairing gates or stopping drug activity at an apartment complex would ameliorate Plaintiff's asthma or her daughter's arthritis.  Thus, a failure to make such repairs is not actionable under the FHA and ADA.

32.     Likewise, if Plaintiff's accommodation request is that Carlton somehow stop alleged drug activity at the apartment complex, such is neither an accommodation that would ameliorate Plaintiff's disability, nor is it a reasonable request.  Plaintiff does not plead facts that explain how Carleton would stop drug use or activity at the complex. Nor does Plaintiff plead facts

---

[15] *Id.*
[16] *See* Plaintiff's Civil Rights Complaint, pgs. 24, 34, 39.
[17] *See* Plaintiff's Civil Rights Complaint, pgs. 32 – 33.

or provide any information that would support such accommodation as financially viable or therapeutically meaningful.

33.     For Carleton, a property management company, to stop drug activity, Carleton would be taking on obligations in the nature of police action. It is not evident in Plaintiff's pleading as to how Carleton would stop any such activity, why Carleton would be responsible for doing so (as opposed to a police force), or how such accommodation would be financially feasible for Carleton. As such, Plaintiff has not alleged facts that such an accommodation is reasonable.

34.     Taking Plaintiff's allegations as true, that Plaintiff has requested general repairs to gates, entryways, elevators and to stop drug activity, Plaintiff has not alleged facts that would support a determination that Defendant's failure to make such repairs causes an unequal ability for Plaintiff to use and enjoy the complex or Property compared to individuals who do not have a disability. To the extent Plaintiff's claims are predicated on any alleged failure to make general repairs, such claims should be dismissed with prejudice as they are not claims that have any plausibility.

### ii. Plaintiff's non-renewal of her lease was made to accommodate her, and Plaintiff's own pleading and attachments negate any claim for failure to accommodate a disability.

35.     To the extent Plaintiff complains that Carleton failed to accommodate her by non-renewing her, Plaintiff's own pleading and the attachments thereto establish that Plaintiff wanted out of the complex. From at least September 8, 2025, Plaintiff had complained to Carleton that the complex was not safe and indicated she wanted to move. In her September 8, 2025, email to HACA and Carleton, Plaintiff demands to be relocated to a new property.[18]

---

[18] *See* Plaintiff's Civil Rights Complaint, pg. 47.

36. Per Plaintiff's own Complaint, Carleton non-renewed Plaintiff in mid-January, 2025. In non-renewing Plaintiff's lease, Carleton noted that Plaintiff was not happy with the unit and did not feel safe at the complex. Carleton copied HACA on the communication to assist HACA with placing Plaintiff in a new unit. And HACA offered to send a new move-out packet to Plaintiff to facilitate transferring Plaintiff to a new property (similar to a previously completed packet Plaintiff submitted to HACA).[19] The non-renewal was given to accommodate Plaintiff's insistence that she be relocated. Other than letting Plaintiff out of the lease, Plaintiff has failed to make allegations that Defendant is able to reasonably accommodate Plaintiff by moving her to a new apartment complex.

37. Moreover, and to the extent that Plaintiff's disability is PTSD, letting Plaintiff out of the lease would resolve Plaintiff's safety concerns about the Property. Thus, to the extent Plaintiff's failure to accommodate claim against Carleton is for non-renewing her, Plaintiff has not asserted a claim for which relief can be granted because Carleton has accommodated Plaintiff by letting her out of the lease.

iii. **Plaintiff's claims on future violations are not only implausible but implicate Article III standing problems.**

38. Additionally, Plaintiff's request for injunctive relief is not plausible (and lacks sufficient facts to support Article III standing) because Plaintiff's Complaint does not show that Plaintiff or her children will sustain harm in the future as she will not have any future possessory rights to be violated by Carleton. *See* 42 U.S.C. § 3604(f)(1)(A); see also *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105 (1983) (finding that allegations of possible future harm were insufficient to support a claim for injunctive relief and did not establish Article III standing to request an injunction). Because Plaintiff was non-renewed and through HACA in order to obtain

---

[19] *See* Plaintiff's Civil Rights Complaint, pg. 18.

a voucher to move to a different property, Plaintiff has neither alleged nor sufficiently alleged that she will suffer a future act violating federal law.

39.     Nor has Plaintiff pleaded that she has a future possessory interest to implicate standing under the FHA or ADA.  *Id.* at 101-2 (to invoke the court's jurisdiction, a plaintiff must satisfy Article III of the constitution by alleging a case or controversy, and for an injunction, the threat of injury must be real and immediate); *see also Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74-76 (2d Cir. 2022) (dismissing claims seeking injunctive relief against future violations of the ADA when no future harm was threatened because the plaintiff lacked Article III standing).

40.     Not only does Plaintiff fail to state the requisite elements to present a plausible failure to accommodate allegation, she fails to provide any facts that suggest she has suffered an injury, and particularly, has failed to provide any facts that she is in danger of suffering from future failures to accommodate by Carleton. Her own Complaint establishes that she was accommodated by being let out of her lease. Thus, Carleton would not have any obligation to make any further accommodations, much less that any such accommodation request could be considered to be a reasonable request as a matter of law. Consequently, the Court should dismiss Plaintiff's Complaint for failing to state a claim, as well as for failing to establish Article III standing for her claim for injunctive relief.  Such claim for injunctive relief should be dismissed with prejudice.

### iv.     Plaintiff's request to be let out of her lease and moved to a new complex came shortly after her request for a first-floor unit, and Carleton accommodated her request to be let out of the lease.

41.     Lastly, the attachments to Plaintiff's pleading appear to complain that she has not been moved to a ground floor apartment unit, despite requesting to be moved.  However, by Plaintiff's own pleading, Plaintiff's request for a ground floor unit was made in August, 2025.[20]

---

[20] *See* Plaintiff's Civil Rights Complaint, pg. 32.

But on September 8, 2025, Defendant emailed Carleton and HACA demanding that Carleton determine how to relocate Plaintiff and her children.

42.     Carleton complied, to the extent it was able to do so, by non-renewing Plaintiff's lease for the Property. If Plaintiff requested a non-renewal and Carleton accommodated such request, it is unclear how Plaintiff has standing to complain of any federal or state statutory violations. Moreover, Plaintiff has not pleaded any facts that non-renewing her was unreasonable, particularly given her numerous complaints about the safety at the complex and her request to be moved. Nor would it be reasonable, given Plaintiff's pleading, for Carleton to move Plaintiff to a new unit at the complex when most of Plaintiff's complaints are that the complex is unsafe and unsecured. Such allegations are not plausible claims and should be dismissed with prejudice.

43.     Plaintiff further fails to plead any facts or provide any attachments that would create an inference that moving Plaintiff to a ground floor unit would ameliorate her PTSD. If Plaintiff's allegations that the gates do not work and homeless or drug users/dealers are able to enter the complex, being moved to a first-floor unit would do nothing to ameliorate Plaintiff's PTSD. But letting Plaintiff out of the lease so she could find a new apartment complex would.

44.     Thus, to the extent Plaintiff's FHA and ADA claims are predicated on non-renewing her, the Court should dismiss such claims because the non-renewal was in accommodation of Plaintiff's complaints about the safety of the apartment complex and Plaintiff has no standing to maintain such claims through injunctive relief. Such claims have no plausibility and should be dismissed with prejudice, including Plaintiff's claims for injunctive relief.

### v. Plaintiff has failed to state a valid claim for retaliation under the Texas Property Code and has pleaded that Carleton is not her landlord.

45. Finally, Plaintiff has failed to state a retaliation claim under the Texas Property Code against Carleton. Plaintiff's retaliation claim appears to be based on the non-renewal of Plaintiff's lease at her request.[21]

46. Plaintiff pleads that Carleton is the company that controls and supervises the complex—the manager of the complex.[22] Plaintiff does not plead that Carleton is the owner of the complex, or include any attachments that suggests Carleton is her landlord.

47. Pursuant to the Texas Property Code, only a landlord can be held liable for retaliation. *See* TEX. PROP. CODE § 92.331(a) (prohibiting landlord for taking certain, enumerated action). Plaintiff does not plead that Carleton is the landlord of the complex, and does not plead any facts that Carleton has purported to be the owner of the complex in Plaintiff's lease for the Property. *See id.* at § 92.001(2) (expressly excluding management form the definition of a landlord unless the manager purports to be an owner in an oral or written lease).

48. Instead, in both her Complaint and the emails attached to her Complaint, Plaintiff acknowledges that Carleton is the manager of the apartment complex. Because Carleton is not the owner of the complex, it cannot be liable for retaliation under Section 92.331 of the Texas Property Code. Such a claim against Carleton is not plausible under the statute itself. Consequently, the Court should dismiss Plaintiff's Texas Property Code claims pursuant to Rule 12(b)(6) of the Texas Rules of Federal Procedure with prejudice.

---

[21] *See* Plaintiff's Civil Rights Complaint, pg. 3, ¶¶ 26 – 28, pg. 4, ¶ 33.
[22] *See* Plaintiff's Civil Rights Complaint, pg. 2, ¶ 9.

## CONCLUSION

49.     Plaintiff's Complaint fails to assert claims on which relief can be granted, including under the FHA, ADA or Texas Property Code.  Plaintiff's pleading itself is nearly devoid of factual allegations and contains primarily conclusory statements that the Defendants in this case have violated federal regulations.  Plaintiff does not plead any specific accommodation request that Carleton failed to make.  And the attachments to Plaintiff's pleading do not clarify matters. Instead, most of the complaints made by Plaintiff as reflected in the documents attached to her pleading do not constitute accommodation requests that would afford Plaintiff, or her minor children, any relief from their disabilities.  Finally, in keeping Plaintiff's request to be moved to a new apartment complex, her lease was non-renewed to accommodate her.  Such claims do not meet with the plausibility requirements and she lacks standing to bring claims for future relief by way of an injunction.

50.     Carleton respectfully requests that the Court grant Defendant Carleton Living/Carleton Management Services' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), as well as pursuant to Rule 12(b)(1) in connection with Plaintiff's claims for injunctive relief.  All of Plaintiff's claims should be dismissed with prejudice.  Carleton further requests all such other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,

THE SUSTER LAW GROUP, PLLC
1316 Village Creek Drive, Suite 500
Plano, Texas 75093-4461
Telephone:    (972) 380-0130
Email:         office@susterlaw.com


/s/ Israel Suster
Israel Suster
State Bar No. 19523580

ATTORNEY FOR DEFENDANT
CARLETONLIVING / CARLETON
MANAGEMENT SERVICES

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, a true and correct copy of *Defendant Carleton Living/Carleton Management Services' Motion to Dismiss Under Rule of Civil Procedure 12(b)(6)* was served on Plaintiff, located at 1638 E. 2nd Street, Apt. No. 401, Austin, Texas 78702, via First Class Mail, as well as on all other parties of record pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, simultaneously with the Electronic Filing of this document.


/s/ Israel Suster
Israel Suster