UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LAUREN B. PENA, individually and on behalf of her minor child, § § § <br> Plaintiff, § § <br> v. § § <br> PATHWAYS AT CHALMERS SOUTH, CARLETON LIVING / CARLETON MANAGEMENT SERIVCES, MICHELLE SMITH, in her individual and official capacity, SHARON CARPENTER, in her individual and official capacity, HOUSING AUTHORITY OF THE CITY OF AUSTIN (HACA), and CHRIS HEALE, in his individual and official capacity, § § § § § § § § § § § § <br> Defendants. § | FILED <br><br> 2026 MAR -3 AM 11: 49 <br><br> CLERK, US DISTRICT COURT <br> WESTERN DISTRICT OF TEXAS <br><br> BY _____CL_____ <br>             DEPUTY <br><br> Civil Action No. 1:26-cv-00132-RP |

## **PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING PRELIMINARY INJUNCTION**

1. Plaintiff respectfully moves the Court to reconsider its February 25, 2026 Order denying Plaintiff's Motion for Preliminary Injunction. Reconsideration is warranted because newly clarified evidence and a more precise timeline establish the causal connection between Plaintiff's protected activity and Defendants' adverse actions.

2. Absent Court intervention, Plaintiff and her minor children face displacement upon expiration of the current lease term in approximately twenty-eight (28) days as a result of the challenged non-renewal. Because Defendants have already initiated additional inspection activity and issued a lease violation following service of this action, the risk of eviction proceedings before adjudication on the merits is concrete and imminent. Preservation of the status quo is therefore necessary.

3. Plaintiff incorporates by reference the evidence and exhibits previously submitted in support of her Motion for Preliminary Injunction and supplements that record with additional post-order events described herein.

## I. STANDARD

4. A district court may revise an interlocutory order at any time prior to final judgment. See Fed. R. Civ. P. 54(b). Reconsideration is appropriate where clarification of the record demonstrates that the Court's ruling rested on an incomplete understanding of material facts.

5. Plaintiff does not reargue prior assertions but addresses the Court's specific finding that Plaintiff did not demonstrate a causal connection between protected activity and non-renewal.

## II. CLARIFIED CAUSAL TIMELINE

6. The Court found that Plaintiff's prior motion reflected "a variety of types of requests" over a multi-year period without a clear relationship to the January 2026 lease non-renewal.

7. Plaintiff respectfully clarifies the following narrowed and documented sequence:

<u>A. September–November 2025 – Protected Activity</u>

During this period, Plaintiff:

- Submitted written complaints regarding broken security gates, elevator failures, and criminal activity;
- Referenced rights under the FHA and ADA;
- Reported the property to the Texas Department of Licensing and Regulation (TDLR);
- Filed or updated a complaint with the U.S. Department of Housing and Urban Development (HUD).

Requests for reasonable accommodations constitute protected activity under the FHA and ADA.

### B. November 3, 2025 – Lease Renewal Offer (Exhibit 1)

Defendants formally offered Plaintiff a 12-month lease renewal. (See Exhibit 1, Lease Renewal Offer dated November 3, 2025.)

The renewal offer confirms that as of November 3, 2025, Defendants intended to continue Plaintiff's tenancy.

### C. December 2025 – Government Enforcement Trigger

In December 2025, TDLR inspected the property following Plaintiff's complaints, found cause, and referred the matter for enforcement. Defendants were aware of Plaintiff's reports and the resulting inspection, as reflected in communications and inspection activity during that period.

### D. January 2026 – Non-Renewal

When Plaintiff sought confirmation regarding the previously offered lease renewal, Defendants instead issued a notice of non-renewal dated January 15, 2026.

8. The non-renewal followed:

- Plaintiff's protected complaints
- Government inspection
- Enforcement referral

Defendants' knowledge of Plaintiff's protected activity and the resulting governmental inspection is reflected in written communications and inspection activity during that period.

9. The lease renewal offer (Exhibit 1) demonstrates that Defendants reversed course after protected escalation.

## III. POST-NON-RENEWAL RETALIATORY CONDUCT

10. Following issuance of the non-renewal, Defendants engaged in additional adverse actions:

<u>January 27, 2026 – Fire Alarm Inspection</u>

Defendants requested entry to test fire alarms. This inspection occurred shortly after Plaintiff's protected complaints and the December 2025 government enforcement referral. Comparable inspections had not occurred during Plaintiff's prior years of tenancy.

<u>March 2, 2026 – Patio Inspection and Lease Violation</u>

Defendants issued another inspection request concerning patio access. Comparable inspections were not conducted for other tenants. When Plaintiff was unavailable at the requested time, Defendants issued a lease violation.

11. The January 27, 2026 inspection occurred after the December 2025 government enforcement referral but prior to formal service of Plaintiff's federal civil rights lawsuit. The March 2, 2026 inspection and resulting lease violation occurred after Defendants were formally served by the United States Marshals Service.

**IV. CAUSAL CONNECTION IS NOW CLEAR**

12. The clarified timeline shows:

A. September–November 2025 – Protected Activity

B. November 3, 2025 – Renewal Offer

C. December 2025 – Government Inspection and Referral

D. January 15, 2026 – Non-Renewal

E. January 27, 2026 – New Inspection Activity Following Enforcement Referral

F. March 2, 2026 – Post-Service Inspection and Lease Violation

13. The proximity between the government enforcement referral and the sudden reversal from renewal to non-renewal establishes a reasonable inference of retaliation.

14. Unlike a multi-year generalized dispute, this sequence reflects a discrete escalation followed by adverse housing action.

## V. LIKELIHOOD OF SUCCESS

15. At the preliminary injunction stage, Plaintiff must show a likelihood of success—not prove the claim.

16. The clarified evidence demonstrates:

- Protected activity (accommodation requests and government complaints)

- Knowledge by Defendants

- Reversal of renewal offer

- Non-renewal after enforcement referral

- Initiation of new inspection activity following government enforcement referral

- Escalation of enforcement activity after service of federal litigation

17. These facts satisfy the prima facie elements of retaliation under the ADA and the Fair Housing Act: protected activity, adverse action, and a causal connection between the two. See Feist v. Louisiana, Dep't of Justice, Office of the Attorney General, 730 F.3d 450, 454 (5th Cir. 2013); Chavez v. Aber, 122 F. Supp. 3d 581, 599 (W.D. Tex. 2015).

## VI. IRREPARABLE HARM IN THE CONTEXT OF SECTION 8 HOUSING

18. Plaintiff and her minor children reside in federally subsidized housing through the Housing Choice Voucher ("Section 8") program. Loss of this housing is not a routine contractual dispute; it carries consequences that cannot be adequately remedied by monetary damages.

19. Plaintiff's lease term expires within approximately twenty-eight (28) days. Once the lease expires, Defendants may initiate eviction proceedings, placing Plaintiff and her minor children at risk of immediate displacement before this Court resolves the merits of Plaintiff's federal retaliation and

5

disability claims. Loss of housing stability during pending civil rights litigation constitutes irreparable harm.

20. First, displacement from Section 8 housing places Plaintiff and her minor children at immediate risk of housing instability. Section 8 housing availability is limited, waitlists are extensive, and relocation within the voucher system is not guaranteed on short notice. Loss of tenancy may jeopardize Plaintiff's voucher status and disrupt continuity of housing assistance.

21. Second, Plaintiff's minor child has diagnosed rheumatoid arthritis requiring mobility accommodations, and Plaintiff suffers from PTSD and asthma. Forced relocation under compressed timelines increases medical risk, stress-related exacerbation of symptoms, and instability in treatment and schooling. Courts recognize that loss of housing and risk of displacement constitute irreparable harm, particularly where vulnerable or disabled tenants are involved.

22. Third, monetary damages cannot restore lost housing stability, prevent interruption in educational continuity, or remedy the psychological and medical harm associated with forced displacement. Once tenancy is terminated and possession lost, the status quo cannot be meaningfully restored.

23. The purpose of preliminary injunctive relief is to preserve the status quo pending adjudication. Maintaining Plaintiff's tenancy during the pendency of litigation prevents irreparable harm while allowing the merits to be resolved through ordinary judicial process.

24. Accordingly, the irreparable harm factor weighs strongly in favor of injunctive relief.

## VII. BALANCE OF EQUITIES AND PUBLIC INTEREST

25. The balance of equities favors maintaining the status quo. Defendants will suffer minimal, if any, financial harm from maintaining the status quo during the pendency of this litigation. Plaintiff's rent is paid through the federally subsidized Housing Choice Voucher program, and Defendants will continue to receive the full contract rent if Plaintiff remains in possession. In contrast, Plaintiff and her minor

children face displacement and housing instability if injunctive relief is denied. The balance of equities therefore weighs strongly in favor of preserving the tenancy pending resolution of this action.

26. The public interest supports enforcement of federal disability and fair housing protections and preventing retaliatory displacement during pending litigation.

## VIII. REQUESTED INJUNCTIVE RELIEF

27. For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its February 25, 2026 Order and enter a Preliminary Injunction:

1. Enjoining Defendants from enforcing the January 15, 2026 lease non-renewal or otherwise initiating eviction, displacement, or termination of Plaintiff's tenancy during the pendency of this action;

2. Enjoining Defendants from engaging in further retaliatory conduct, including targeted inspections, lease violations, or interference with disability-related accommodations;

3. Preserving the status quo of Plaintiff's continued residence in her current unit pending final resolution of this case; and

4. Granting such other and further relief as the Court deems just and proper.

## IX. CONCLUSION

28. The clarified timeline demonstrates that inspection and lease enforcement activity began shortly after the December 2025 enforcement referral and escalated further after Defendants were formally served with Plaintiff's federal civil rights lawsuit by the United States Marshals Service, supporting a reasonable inference of retaliatory motive.

29. For these reasons, Plaintiff respectfully requests that the Court reconsider its February 25, 2026 Order and grant preliminary injunctive relief maintaining the status quo pending resolution of this action.

Respectfully submitted,

Lauren B. Peña
512-318-1700
lauren.pena45@gmail.com
1638 E. 2nd Street #401
Austin, TX 78702

**CERTIFICATE OF SERVICE**

I certify that on March 3, 2026, I filed this Response with the Clerk of Court using the CM/ECF system, which will send notice of filing to all counsel of record.

_____.
Lauren B. Peña

**Exhibits**

- Exhibit 1 – Lease Renewal Offer (Nov. 3, 2025)
- Exhibit 2 – Fire Alarm Inspection Notice with email correspondence.
- Exhibit 3 – Fire Alarm Inspection Reschedule Notice with email correspondence.
- Exhibit 4 – Patio Inspection Notice.
- Exhibit 5 – Patio Inspection Notice Email correspondence.
- Exhibit 6 – Lease Violation
- Exhibit 7 – Causation Timeline Chart

Exhibit #1

10H#

## LEASE RENEWAL OFFER

Date:  11/03/2025

From:  Michelle Smith, Property Manager / Agent for Owner
Pathways at Chalmers Courts South
1638 E 2nd St
Austin, TX 78702-4412
(737) 237-3003

To:  Lauren Pena
1640 East 2nd Street #401
Austin, TX 78702

Bldg: 1
Apt: 401

Dear Lauren Pena:

The lease on your apartment # 401 will expire on 01/31/2026. We are currently offering the lease renewal terms and rates shown below.

1. You may sign a 12 month lease renewal for $ 2,287 per month.

This offer will expire on 12/03/2025.

We hope you will continue to make your home with us. Should you have any questions, please call or come by the management office.

Sincerely,

_____
Michelle Smith, Property Manager

Exhibit 2

From: Lauren Peña lauren.pena45@gmail.com
Subject: Smoke Alarm Inspection – Conditional Access, Safety Limitations, and Identification Requirement
Date: January 27, 2026 at 3:02 PM
To: Michelle Smith msmith@carletonms.com
Cc: Chris Heale chrish@hacanet.org
Bcc: Lauren Peña lauren.pena45@gmail.com



Michelle,

I acknowledge receipt of your notice regarding the smoke alarm inspection scheduled for January 28, 2026.

Due to ongoing federal litigation involving management conduct and unit conditions, access to my unit is permitted only under the following conditions.

- One maintenance technician only is authorized to enter my unit, solely for the limited purpose of verifying the presence and operability of smoke alarms.

- No apartment management personnel, supervisors, or additional staff are authorized to enter my unit at this time.

- For safety and security reasons, the maintenance technician must present proper identification prior to entry, and I require a copy for my records.

- No photographs, recordings, inspections, or actions beyond smoke alarm verification are authorized.

- I will be present during the inspection.

Please also note that I have previously submitted written complaints regarding the fire alarm system repeatedly activating in the middle of the night without cause, disturbing my household. Based on those prior incidents, I am already aware that the smoke alarms within my unit are present and functional. This inspection is therefore acknowledged as a verification only, not a corrective or investigative entry.

This communication constitutes conditional consent for limited access and is not a refusal of entry. All rights, claims, and defenses are expressly preserved.

Given the pending litigation, I respectfully request that any further communication regarding access, inspections, or lease status be **directed through legal counsel.** The federal summons is attached for reference.



*Exhibit 3*

**From:** Lauren Peña lauren.pena45@gmail.com
**Subject:** Re: Smoke Alarm Inspection – Conditional Access, Safety Limitations, and Identification Requirement
**Date:** January 28, 2026 at 2:04 PM
**To:** Michelle Smith msmith@carletonms.com
**Cc:** Chris Heale chrish@hacanet.org
**Bcc:** William.BowmanJr@hud.gov



Michelle,

I have received notice that the smoke alarm inspection has been rescheduled to Friday, January 30, 2026, at 9:00 a.m.

My prior written response and conditions for access remain in effect and apply to the rescheduled date.

Please note that repeated or last-minute rescheduling creates a substantial disruption to my household and interferes with scheduled family obligations and ongoing employment opportunities I am actively pursuing. Accordingly, I may be unable to consent to additional rescheduling beyond this date.

This acknowledgment does not waive any rights and is provided solely to confirm receipt of the revised notice.

> Dear Valued Residents, Please be advised that a mandatory smoke alarm inspection will take place tomorrow, January 28th, 2026. This inspection is a life-safety requirement, and access to your unit is required. Failure to comply will result in a violation and may subject your lease to non-renewal. Thank you for your prompt cooperation in helping us maintain a safe living environment for all residents. Sincerely, Management -- Pathways at Chalmers Courts South

> Dear Valued Residents, The fire inspections have been rescheduled for Friday January 30th at 9:00 a.m. If you have any questions, please call the office 737-204-4848. Thank you! -- Pathways at Chalmers Courts South

Thank you,

Lauren B. Peña
Chalmers South 401
(512) 318-1700
Lauren.pena45@gmail.com


> On Jan 27, 2026, at 3:02 PM, Lauren Peña <lauren.pena45@gmail.com> wrote:
>
> Michelle,
>
> I acknowledge receipt of your notice regarding the smoke alarm inspection scheduled for January 28, 2026.
>
> Due to ongoing federal litigation involving management conduct and unit conditions, access to my unit is permitted only under the following conditions.
>
> - One maintenance technician only is authorized to enter my unit, solely for the limited purpose of verifying the presence and operability of smoke alarms.
>
> - No apartment management personnel, supervisors, or additional staff are authorized to enter my unit at this time.
>
> - For safety and security reasons, the maintenance technician must present proper identification prior to entry, and I require a copy for my records.

12

cooperation in helping us maintain a clean and safe community for everyone. Thank you, Management -- Pathways at Chalmers Courts South

Exhibit #4

Friday 4:45 PM

Dear Valued Resident, Starting Monday, March 2nd, management will be walking all patios and balconies to ensure compliance with the lease agreement. To avoid receiving a violation notice, please make sure your patio or balcony contains only appropriate outdoor items and is free of clutter. Approved Items for Patios/Balconies: Outdoor patio furniture (chairs, tables, benches) Outdoor cushions designed for patio use Potted plants and planters Small outdoor décor items intended for exterior use Outdoor rugs specifically made for patios Items Not Permitted: Indoor furniture (couches, dressers, bookshelves, etc.) Storage bins or boxes Bicycles or large recreational equipment Trash bags or loose items Clothing, towels, or laundry hanging over railings Appliances or electronics Excessive décor or clutter of any kind If your patio or balcony is not in compliance, a lease violation notice will be issued. If you have any questions regarding approved items, please contact the office for clarification. Thank you for your cooperation.  -- Pathways at Chalmers Courts South

12



Exhibit 5

**From:** Lauren Peña lauren.pena45@gmail.com
**Subject:** Second Inspection Notice Within Three Weeks
**Date:** March 2, 2026 at 8:22 AM
**To:** Michelle Smith msmith@carletonms.com
**Cc:** Chris Heale chrish@hacanet.org, michaelg@hacanet.org, Sharon Carpenter SCarpenter@carletonms.com
**Bcc:** JoHanna Cox JD johanna@johannacoxlaw.com, William Bowman william.bowmanjr@hud.gov

Dear Management,

Please be advised that I perceive the timing and frequency of these inspection notices as harassment in light of my pending federal civil rights litigation in the United States District Court for the Western District of Texas, related housing complaints.

I have resided at Chalmers Courts South for several years under Section 8 without prior issues and have passed every annual inspection, including the patio. This is the second inspection notice within three weeks. Neither this inspection nor the last one has ever happened in the past, which is not consistent with prior practice during my tenancy.

Tomorrow is Election Day and, as you are aware, I am a declared candidate for United States Congress. I will be at polling locations meeting constituents, and no adult over the age of 18 will be present in the unit. My daughter is 17. I will therefore not be available to provide access.

For your records, I am attaching a current photo of my patio showing compliance with lease requirements.

I request that management address ongoing safety concerns that have been repeatedly reported, including broken gates, drug activity, drug dealing, and unauthorized individuals loitering near resident units leaving behind dangerous items for children and residents. These issues present real safety risks to families living in this property.



Dear Valued Resident, Starting Monday, March 2nd, management will be walking all patios and balconies to ensure compliance with the lease agreement. To avoid receiving a violation notice, please make sure your patio or balcony contains only appropriate outdoor items and is free of clutter. Approved Items for Patios/Balconies: Outdoor patio furniture (chairs, tables, benches) Outdoor cushions designed for patio use Potted plants and planters Small

14

*Exhibit #6*

# NOTICE OF LEASE VIOLATION

Lauren Pena

Date: February 27, 2026

*✱ This was delivered 3/2/26*

Re: Notice of lease violation TAA Lease Contract between the resident(s) named above and
**Pathways at Chalmers South LP**

_____ (owner)

(Names of all residents)
**1638 East 2nd Street, #401**
(Street address and dwelling unit number, if applicable)
**Austin, TX 78702**
(City, State, Zip)

Dear Resident(s):
The following violations of your lease have been reported or discovered concerning you or the premises in which you reside:

- ☐ Criminal conduct
- ☐ Disturbance
- ☐ Foil on window
- ☐ Improper storage
- ☐ Loud music
- ☐ Refusing to allow entry
- ☐ Threatening others
- ☒ Unauthorized modification of dwelling
- ☐ Damage to property
- ☐ Disturbing others
- ☐ Having hazardous materials
- ☐ Improperly heating the unit
- ☐ Loud or obnoxious behavior
- ☐ Tampering with telecommunications
- ☐ Trash by your entry
- ☒ Unauthorized occupant
- ☐ Disrupting our business operations
- ☐ Excessive noise
- ☐ Illegal parking
- ☐ Littered patio
- ☐ Making bad faith allegations
- ☐ Tampering with utilities
- ☐ Unauthorized animals
- ☐ Use of windows for entry or exit
- ☒ Other (explain below)

Details of the lease violations (refer to date, location, persons involved and specific lease paragraphs): **Failure to provide management with means to enter unit. Unauthorized occupant living in unit. Lease Violation 10.3, 14, 20.2, Community Policies Pg. 4, Paragraph 1.**

Please do the following (check one or more):

Contact owner's representative within 24 hours

☐ in person or

☒ by telephone at   **737-204-4848**

to discuss the violation with us and to advise us what you have done or plan to do about the violations.

If you have any questions, these can be addressed when you contact the owner's representative. If you fail to timely make such contact, and reach a resolution satisfactory to the owner/manager, additional action will follow as provided in your lease. Thank you for your anticipated cooperation.

**02/27/2026**
Date notice was delivered to resident or unit

**Hand Delivered**
Manner of delivery (Optional)

_____
Signature of owner's representative

For office use only:
Corrective measures taken by resident and when: _____

By (name of owner's representative): _____

Texas Apartment Association



## Exhibit 7 – Causation Timeline Chart

| Date | Event | Legal Significance |
|---|---|---|
| September–November 2025 | Plaintiff submits written complaints regarding broken gates, elevator failures, criminal activity; references FHA/ADA rights; reports property to TDLR and HUD. | Protected activity under the Fair Housing Act and ADA. |
| November 3, 2025 | Defendants issue formal 12-month Lease Renewal Offer to Plantiff. (See Exhibit 1) | Confirms intent to renew tenancy prior to regulatory enforcement escalation. |
| December 2025 | TDLR inspects property, finds cause, and refers matter for enforcement action. | Government enforcement trigger following Plaintiff's protected complaints. |
| January 15, 2026 | Defendants issue Notice of Lease Non-Renewal instead of honoring prior renewal offer. | Adverse housing action occurring shortly after enforcement referral. |
| January 27, 2026 | Defendants request fire alarm inspection not previously conducted during prior years of tenancy. | New inspection activity initiated shortly after enforcement referral, supporting inference of retaliatory pattern. |
| March 2, 2026 | Defendants issue patio inspection request and subsequent lease violation when Plaintiff unavailable; comparable inspections not conducted for other tenants. Occurred after service of federal civil rights lawsuit by U.S. Marshals. | Escalation of enforcement activity following litigation service, strengthening inference of retaliatory motive. |