IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAUREN B. PEÑA, *individually and on behalf of her minor child*, | § | |
| Plaintiff, | § | |
| v. | § | 1:26-CV-132-RP |
| PATHWAYS AT CHALMERS SOUTH, et al., | § | |
| Defendants. | § | |

**ORDER**

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendant Carleton Living / Carleton Management Services ("Carleton"), (Dkt. 13), and a Motion to Dismiss for Failure to State a Claim filed by Defendants Chris Heale ("Heale"), in his individual and official capacity, and the Housing Authority of the City of Austin ("HACA") (collectively, "Defendants"), (Dkt. 26). Plaintiff Lauren B. Peña ("Plaintiff") filed responses, (Dkts. 16, 27), and Defendants HACA and Heale filed a reply, (Dkt. 30).[1] Also before the Court is Defendant Heale's Motion to Dismiss Individual Capacity Claims, (Dkt. 25), Defendants' Motion to Strike or Alternatively, to Disregard, and Motion for Sanctions, (Dkt. 35), and responsive briefing. Having considered the briefing, the evidence, and the relevant law, the Court will grant the motions to dismiss as set forth below and will dismiss Plaintiff's Complaint, (Dkt. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 28 U.S.C. § 1915(e)(2).

[1] Plaintiff filed a document styled as a sur-reply, (Dkt. 31), but did not seek leave of Court, so this document was not filed in accordance with the Local Rules, and this Court will disregard it. *See* Local Rule CV-7(e) ("Absent leave of court, no further submissions on the motion are allowed" after the filing of a reply.).

## I. BACKGROUND

Plaintiff brought suit against Defendants Pathways at Chalmers South ("Pathways"); Carleton; Michelle Smith, in her "individual and official capacity" ("Smith"); Sharon Carpenter, in her "individual and official capacity" ("Carpenter"); HACA; and Heale, in his "individual and official capacity," based on her allegations that Defendants failed to accommodate her and her daughter's disabilities then retaliated against her when they initially offered her a lease renewal, but declined her later request to renew her lease. (Compl., Dkt. 1, at 1−3). Plaintiff brings claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, ("ADA");[2] Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, ("Section 504"); and the Fair Housing Act, 42 U.S.C. § 3604, ("FHA"). (Compl., Dkt. 1, at 4).

In support of her Complaint, Plaintiff attaches several emails she sent to various Defendants over the course of her lease. As some representative examples, Plaintiff attaches an email she sent to Defendant Carleton, among others, in November 2025 which explains that she had witnessed the presence of homeless individuals and drug activity in her building. (Dkt. 1-9, at 2). She articulates that the presence of homeless individuals in her apartment "exacerbate[es] my disability, PTSD." (*Id.* at 4). In the email, she states that these conditions violate her rights under the FHA, the ADA, and Section 504. (*Id.*). She tells Defendant Carleton as well as state government and HACA employees that "[t]wo of my neighbors are active drug users," that her conditions are "hazardous and unsanitary," and that "multiple drug dealers, at least three (3) [are] residing in my building." (*Id.* at 4). She notes that "the elevator is frequently out of service, leaving residents in wheelchairs trapped on upper floors, most recently for five consecutive weeks." (*Id.*). She continues by asking Defendants

[2] A private residential property would be subject to Title III, which governs public accommodations and services operated by private entities. 42 U.S.C. § 12182. Title II covers government entities. 42 U.S.C. § 12132. Understanding Plaintiff has sued a private "residential property" and its management company, Plaintiff is not correct in her argument that all Defendants are covered by Title II. (Compl., Dkt. 1, at 2, 4). The Court construes Plaintiff's claim as having been brought under Title II and Title III.

HACA and Carleton to "stop the ongoing discrimination, ADA violations, Fair Housing Act violations against my family" and requests "immediate federal intervention." (*Id.*). She also provides an email from August 2024 in which she requested repairs to a non-functional elevator, in which she mentions her own asthma and her daughter's rheumatoid arthritis and says the non-functioning elevator exacerbates those conditions and that her daughter requires an elevator because of her condition. (Dkt. 1-8, at 2). Plaintiff likewise encloses a receipt of a Housing Discrimination Complaint to the U.S. Department of Housing and Urban Development, dated March 2024, (Dkt. 1-2), and a January 2026 "periodic update notification" about a case from the Texas Department of Licensing & Regulation, (Dkt. 1-3).

In her response brief, Plaintiff attaches a notice of an offer of a lease renewal dated November 3, 2025 from Defendant Smith, which said it would expire on December 3, 2025. (Resp., Dkt. 16, at 28). Plaintiff alleges she reached out to her landlords on January 9, 2026 to inquire about renewing her lease, (Compl., Dkt. 1, at 3), and that Defendant Smith issued a notice of lease non-renewal dated January 15, 2026. (Dkt. 1-4).

## II. LEGAL STANDARD

### a. Rule 12(b)(1) Motion

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**b. Rule 12(b)(6) Motion**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

For the reasons below, upon review of the Rule 12(b)(1) and Rule 12(b)(6) Motions, as well as its own review for frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), the Court finds that Plaintiff's claim under the FHA should be dismissed without prejudice as to Defendants HACA and Heale in his official capacity and dismissed with prejudice as to all other Defendants and as to Heale in his individual capacity; that her ADA and Section 504 claims should be dismissed with prejudice as to all Defendants; and that her state law claim should be dismissed without prejudice as to all Defendants.

### a. Federal Claims Against Defendants Pathways & Carleton

Defendant Carleton moved to dismiss Plaintiff's complaint under Rule 12(b)(6). (Dkt. 13). In addition, a district court "shall dismiss" a case brought *in forma pauperis* at any time if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28

U.S.C. § 1915(e)(2)(B). The Court finds that Defendants Pathways and Carleton should be dismissed because Plaintiff fails to state a claim on which relief may be granted.[3]

To state a reasonable accommodation claim under the ADA, a plaintiff is required to plead that (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the defendant; and (3) the defendant failed to make reasonable accommodations for such known limitations. *See Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018).[4] These elements also apply to a Section 504 claim. *See Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015). Similarly, to state a claim under the FHA based on a defendant's refusal to make reasonable accommodations necessary to afford disabled persons equal opportunity to use and enjoy a dwelling, Plaintiff must allege all of the following elements: (1) that she is, or those she purports to represent are, disabled within the meaning of the FHA; (2) that the defendant knew or should reasonably be expected to know of the disability; (3) that accommodation of the disability may be necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable, and (5) that defendant refused to make the requested accommodation. *Chavez v. Aber*, 122 F. Supp. 3d 581, 595 (W.D. Tex. 2015).

"Reasonable accommodation claims under the FHA and ADA both require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled." *Providence Behavioral*

[3] Defendant Pathways moved to dismiss based on procedural defects with Plaintiff's service of the complaint. (Dkt. 17). Rather than address Defendant Pathways' arguments about whether Plaintiff's service was proper and order Plaintiff to properly effectuate service, given that the Court must dismiss a case brought *in forma pauperis* which fails to state a claim on which relief may be granted, the Court will proceed to dismiss Plaintiff's claims for failure to state a claim under 28 U.S.C. § 1915(e)(2).

[4] The type of proof required for a Title III reasonable accommodations claim is the same as in the Title I or Title II context. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (applying Title I standard to Title III); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) (noting courts have applied Title I failure-to-accommodate standard to Title II).

*Health*, 902 F.3d at 459. A plaintiff's requested accommodation must be "reasonable," meaning that it does not impose undue financial or administrative burdens or "fundamentally alter the nature of the service, program, or activity." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020). The ADA requires reasonable accommodations, but it does not require covered entities to "ensure accessibility at any cost, *see Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011), or to provide "the ideal or preferred accommodation," *Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 365 (E.D. La. 2020), aff'd sub nom. *Bailey v. France*, 852 F. App'x 852 (5th Cir. 2021).

While Plaintiff asserts that she submitted multiple requests—to fix an elevator that broke frequently and to address the presence of homeless individuals and criminal activity in her building—she does not identify in her Complaint what specific accommodations she requested, why those accommodations were reasonable and necessary to afford her an equal opportunity to use and enjoy her residence, that Defendants were aware of her and her daughters' disabilities' consequential limitations, and that Defendants refused her requests. (Compl., Dkt. 1). (*Id.*). Plaintiff is required to provide a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a), which must give the defendant "fair notice of what the claim is and the grounds upon which it rests, *Twombly*, 550 U.S. at 555. As such, Plaintiff cannot require the Defendants or the Court to review lengthy attachments to discern the basis for her claims. Plaintiff's claims may be dismissed for the reason alone, however, given Plaintiff's pro se status and the liberal pleading standard, the Court proceeds to consider Plaintiff's other allegations in her response brief and attachments to her Complaint. The Court understands from Plaintiff's attached emails that Plaintiff was concerned about herself and her daughter needing to use the stairs during periods where an elevator was broken, given her daughter's rheumatoid arthritis and her

asthma, and that she believes addressing crime and preventing homeless individuals from accessing her building would be a reasonable accommodation for PTSD. (Response, Dkt. 16, at 12).

The Court agrees with Plaintiff's arguments that PTSD, rheumatoid arthritis, and asthma could each be the basis for a reasonable accommodations request depending on the situation, because they are conditions which could substantially limit major life activities. (*Id.* at 8).[5] However, Plaintiff's claims must still dismissed for the following reasons. First, as to her request for repairing the elevator in her building, Plaintiff has not plausibly alleged that Defendants denied these requests. (Resp., Dkt. 16, at 10). Rather, the documents attached to her complaint show that she emailed to explain that the elevator had broken for a period in August 2024, and later broke again in August 2025 and for another period in November 2025; however, Plaintiff does not allege that the property management company declined to address her requests about the elevator. (*See* Dkt. 1-8). Second, as to Plaintiff's requests related to the presence of criminal activity or homeless individuals in her building, Plaintiff has also not cited any authority to support her argument that taking actions akin to policing an apartment complex is a reasonable accommodation for having a tenant with PTSD. Investigating allegations of criminal activity by tenants or hiring security guards would be a fundamental alteration to the nature of the service Plaintiff's property provides and is not a reasonable accommodation. *Cadena*, 946 F.3d at 724. As such, Plaintiff has failed to state a reasonable-accommodations claim under the ADA or the FHA.

The Court turns next to Plaintiff's retaliation claim. To make a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *See Feist v. La. Dep't of Justice, Off. of the Atty. Gen.*, 730 F.3d 450, 454

[5] Under both the ADA and Section 504, a person is disabled if she has "a physical or mental impairment that substantially limits one or more major life activities." *Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015) (quoting 2 U.S.C. § 12102(1)(A)).

(5th Cir. 2013). Similarly, to allege a prima facie case of retaliation under the FHA, a plaintiff must allege that (1) she engaged in an activity that the FHA protects; (2) she was subjected to an adverse action by the defendant; and (3) a causal connection exists between the protected activity and the adverse action. *Chavez*, 122 F. Supp. 3d at 599. "Protected activities [under the FHA] include [a] request for a reasonable accommodation" for people with disabilities. *Id.* at 599−600.

Plaintiff makes only conclusory statements as to these elements in her Complaint and does not elaborate on what the protected activity was that serves as the basis for the alleged retaliation, nor what gives rise to the assumption that the lease non-renewal had a causal connection to the protected activity. (Compl., Dkt. 1). Again, the Court can discern from the attachments that Plaintiff has made various requests in recent years regarding conditions in her building while referring to disability law. However, Plaintiff's Complaint does not plead facts to show a causal connection exists to an adverse action. Plaintiff's statement that "the close temporal proximity between Plaintiff's protected activity and Defendants' silence and adverse action establishes pretext" is conclusory and does not rise to the level of stating a claim supported by factual allegations which "raise a right to relief above the speculative level." *Cuvillier*, 503 F.3d at 401. Also, although Plaintiff sets forward a timeline in her Response alleging that Defendants issued a notice of non-renewal in January 2026 after government inspectors acted on her disability-related complaints in December 2025, Plaintiff's attachments to her response reveal that the November 2025 offer to renew her lease expired on December 3, 2025, (Resp., Dkt. 16, at 28), before she alleges she contacted her building and asked to renew it on January 9, 2026, (Compl., Dkt. 1, at 3). Her filings therefore do not support an inference that the offer expired for a retaliatory reason. Further, Plaintiff's attachments to her complaint show several similar requests she made, and requests made throughout her tenancy, prior to the offer to

renew her lease. This series of events does not plausibly suggest retaliatory motive.[6] Plaintiff's claim for retaliation against Defendants Chalmers and Pathways must be dismissed.

**b. Federal Claims Against Defendants Smith & Carpenter**

Defendants Smith and Carpenter have not filed motions to dismiss, however, as described above, a district court "shall dismiss" a case brought *in forma pauperis* at any time if the court determines the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).[7] Claims against individuals are not permitted under Title III of the ADA or Section 504. *Garces v. Brain & Spine Inst. of San Antonio*, No. SA-25-CV-00639-XR, 2025 WL 1934534, at *3 (W.D. Tex. June 20, 2025), *report and recommendation adopted*, No. SA-25-CV-00639-XR, 2025 WL 1933727 (W.D. Tex. July 11, 2025) (collecting cases); *Alidoust v. Hancock Cnty., Mississippi*, No. 1:17CV35-LG-RHW, 2017 WL 3298682, at *3 (S.D. Miss. Aug. 2, 2017) (collecting cases). As such, Plaintiff's ADA and Section 504 claims against Defendants Smith and Carpenter are dismissed as frivolous. While Plaintiff does not explain why Defendants Smith and Carpenter's actions in particular amount to an FHA violation, she appears to base her claim on the same facts that she alleges support her FHA claim against Defendants Carleton and Pathways, given that she alleges Smith and Carpenter managed her building and their titles in her attachments. (Compl., Dkt. 1, at 2; Dkt. 1-11, at 3). As a result, the FHA claims against Defendants Carleton and Pathways

[6] To the extent Plaintiff's state law retaliation claim rests on a six-month retaliation window set forth in Texas state law, (Resp., Dkt. 16, at 22), this Court will decline supplemental jurisdiction over Plaintiff's state law claims, as set forth *supra*.

[7] To the extent Plaintiff sues these individuals as a substitute for suing Carleton and Pathways, that claim would be dismissed for the same reasons described in the above section.

claims are dismissed because Plaintiff fails to state a claim upon which relief may be granted, as described above.

### c. Federal Claims Against Defendants HACA and Heale

The Court finds that Plaintiff's claims against Defendants HACA and Heale, in his official capacity,[8] should be dismissed under Rule 12(b)(1) as to Plaintiff's FHA claims and Rule 12(b)(6) as to Plaintiff's ADA and Section 504 claims. Plaintiff's allegations against Heale and HACA are limited to the statements that she "notified [Heale and HACA] that an available accessible unit was being shown to other potential renters" but that they "failed to act." (Compl, Dkt. 1, at 3). Plaintiff also argues that HACA "had authority to intervene to prevent discrimination," but failed to do so, without alleging more. (*Id.* at 2).

Plaintiff sues Heale "in his . . . official capacity." (Compl., Dkt. 1, at 1). As a threshold matter, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The official-capacity claims against Defendant Heale are thus redundant of the claims against Defendant HACA. The Court considers the claims against Defendants HACA and Heale together and finds they should be dismissed for lack of jurisdiction (for the FHA) and failure to state a claim (for the ADA and Section 504).

i. Rule 12(b)(1)

As to Plaintiff's claim under the FHA, under the doctrine of sovereign immunity, a state agency is immune from suit unless it expressly consents to be sued, and the specific terms of that

---

[8] Defendant Heale moved to dismiss the claims against him in his individual capacity. (Dkt. 25). In her Response, Plaintiff asserts that "claims are maintained against Defendant Heale solely in his official capacity." (Resp., Dkt. 27, at 2). Defendant Heale's motion, (Dkt. 25), will therefore be granted as unopposed.

consent define the court's jurisdiction to entertain the suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). As a political subdivision of the State of Texas, HACA is entitled to governmental immunity. *Benavides v. Harris Cnty., Texas*, No. 24-20457, 2025 WL 3270630, at *3 (5th Cir. Nov. 24, 2025) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n. 2 (Tex. 2008)); *Modica v. Reyna*, No. 1:08-CV-871, 2009 WL 2827975, at *6 (E.D. Tex. Sept. 2, 2009); *see* Tex. Loc. Gov't Code § 392.006 ("[A] housing authority is a unit of government."). To bring a lawsuit against HACA, Plaintiff must show that the sovereign has waived immunity. A waiver of sovereign immunity cannot be implied; it must be expressly stated in statutory text and must be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Consequently, a party seeking to sue the sovereign must identify the specific statutory waiver of sovereign immunity in its pleadings. *See Lundeen v. Minetta*, 291 F.3d 300, 304 (5th Cir. 2002). Plaintiff has not done so, but in her Response, she cites the FHA, the ADA, and Section 504. (Resp., Dkt. 27, at 4).[9] The Court therefore considers whether each statute provides Plaintiff with a valid waiver of sovereign immunity.

As to the FHA, the Fifth Circuit has considered whether Congress validly abrogated sovereign immunity via the FHA and found that it does not. *See McCardell v. U.S. Dep't of Hous. & Urb. Dev.*, 794 F.3d 510, 522 (5th Cir. 2015). As such, the Court will dismiss Plaintiff's FHA claims against Heale and HACA under the doctrine of sovereign immunity. As to the ADA, Congress purports to have abrogated states' sovereign immunity via Title II of the ADA, but to determine whether such abrogation is valid, a court must decide "on a claim-by-claim basis" "(1) which aspects

[9] Plaintiff also argues in her response, (Dkt. 27, at 4), that she has a waiver of sovereign immunity under *Monell v. Department of Social Securities*, 436 U.S. 658 (1978), but that case interpreted a statutory exception to sovereign immunity for municipalities to be sued under Section 1983 of Title 42 of the United States Code, and Plaintiff has not pled a Section 1983 claim. Further, even if Plaintiff had pled a Section 1983 claim, *Monell* would not provide a waiver of sovereign immunity in this case because Plaintiff does not allege that the housing conditions she experiences are the result of a municipal custom or policy, as *Monell* requires. *Id.*

of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). In other words, the sovereign immunity inquiry for the ADA occurs after "it is decided that [a plaintiff] has stated a claim under Title II," because a plaintiff bringing a meritorious Title II claim may also demonstrate a waiver of sovereign immunity. *Id.* Finally, as to Section 504, construed liberally, Plaintiff pleads that Defendants have waived their state sovereign immunity by receiving federal financial assistance. (Compl, Dkt. 1, at 4); *Block*, 952 F.3d at 619 (citing *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 345 (5th Cir. 2005)). Because sovereign immunity may be waived where a plaintiff states a Title II claim under the ADA, and because Section 504 abrogates sovereign immunity, the Court turns to whether Plaintiff has stated a claim under state a claim under Title II or Section 504.

ii. Rule 12(b)(6)

Plaintiff fails to state a claim that she was denied equal access to a program by HACA and/or Heale due to her qualified disability. Plaintiff alleges that her apartment complex (which she does not allege is managed by Defendants HACA or Heale) showed other tenants a particular unit—it is implied that she had a reasonable accommodations request pending and believed that unit should not have been shown to other renters—and that HACA and Heale did not intervene to prevent them from doing so. (Compl., Dkt. 1, at 3). This allegation fails to state a claim that Defendants HACA and Heale failed to accommodate her disability or her child's disability. Plaintiff's use of the term "deliberate indifference" alone does not suffice to state a claim. (*Id.* at 3). To show "deliberate indifference" under Section 504, a plaintiff must show that the defendant disregarded a "strong likelihood" that the challenged action would "result in a violation of federally

protected rights." *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025). Plaintiff's conclusory allegation that Defendants HACA and Heale did not intervene when an available accessible unit was being shown to other potential renters does not state a claim which would meet that standard. (Compl, Dkt. 1, at 3). Similarly, to state a claim for retaliation under the or the ADA, the Complaint must allege that HACA or Heale took any adverse action against Plaintiff because of her protected activity. *Feist*, 730 F.3d at 454. However, the Complaint does not allege that either HACA or Heale took such an adverse action; rather, she alleges that her landlords chose not to renew her lease, a decision in which she does not allege HACA and Heale played any role. (Compl., Dkt. 1, at 2−3).

In her Response to Defendants HACA and Heale's Motion to Dismiss, Plaintiff frames her allegations slightly differently. There, Plaintiff says she alleges that "HACA failed to exercise the authority it does possess under federal law," "failed to ensure that the housing it subsidized and approved was accessible," and "failed to respond to known accessibility barriers despite repeated notice." (Resp., Dkt. 27, at 5, 12). However, she does not make allegations supporting an inference that she was denied equal access to a service or program operated by Defendants HACA and Heale by virtue of a disability under the ADA or Section 504, nor that she faced retaliation from Defendants HACA and Heale under the ADA or Section 504; these arguments appear to attempt to sue to enforce FHA housing standards, but the Court does not have jurisdiction over those claims, as described above. As such, Plaintiff has failed to state a claim under the ADA and Section 504 as to Defendants HACA and Heale.

**d. State Law Claims**

Plaintiff asserts a claim for retaliation pursuant to Section 92.331 of the Texas Property Code. Although Plaintiff does not state a basis for the Court's jurisdiction over this state-law claim in her Complaint, the Court's jurisdiction over such state law claims would be based on

supplemental jurisdiction. 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction . . ." *Id.* § 1367(c)(2)–(3).

In deciding whether to exercise its discretion to retain supplemental jurisdiction over state law claims under Section 1367 after all federal claims have been dismissed, a district court should be "guided by the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity." *Shine v. Goodwin & Co.*, No. 1:23-CV-1131-RP, 2024 WL 3566700, at *1 (W.D. Tex. July 29, 2024) (quoting *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009) (citation omitted)). No single factor is necessarily dispositive. *Id.* In cases like this one, "when all federal-law claims are eliminated before trial," the Fifth Circuit has made clear that "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims." *Id.*; *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 364 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). This rule is "neither mandatory nor absolute," *Brookshire Bros.*, 554 F.3d at 601, but it is the default rule, *see, e.g., Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992) (finding that the "matter justified no departure from the usual rule that dismissal was required").

Here, the Court finds no reason to depart from the default rule. Two of the three statutory factors under 28 U.S.C. § 1367(c) are met here. Section 1367(c)(2) is met as the federal claims upon which jurisdiction was based have been disposed of. Section 1367(c)(3) is met because, as there are no more federal claims, the state claims predominate. *See Shine*, 2024 WL 3566700, at *2. The

common-law factors—judicial economy, convenience, fairness, and comity—also weigh against retaining the case. Federal courts "often are not as well equipped for determinations of state law as are state courts." *Parker & Parsley*, 972 F.2d at 588–89. *Id.* Considering the common law and statutory factors, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claim.

**e. Motion to Strike, or Alternatively, to Disregard, and for Sanctions**

Defendants' Motion to Strike, or Alternatively to Disregard, and for Sanctions, raises several cases cited in Plaintiff's briefing which do not stand for the propositions Plaintiff represents. (Mot. Strike, Dkt. 35, at 6−12). Defendants also request that the Court begin Rule 11 sanctions proceedings because (1) Plaintiff, although she proceeds pro se, has legal training, and (2) pro se litigants may be sanctioned for relying on inapplicable or incorrect legal authorities. (*Id.* at 12−14, 16−18). Finally, Defendants request that the Court review Plaintiff's complaint for frivolousness, and either strike or disregard the authorities they identify as incorrect. (*Id.* at 14, 19). Considering Plaintiff's pro se status, and the fact that Plaintiff's claims have been dismissed in their entirety, the Court will decline to hold a Rule 11 sanctions hearing about Plaintiff's mischaracterizations of the legal authorities in her briefs at this time. However, Plaintiff is warned that future filings before this Court which mischaracterize the legal authorities on which she relies will result in an order to show cause why sanctions are not warranted. Additionally, the Court notes that Plaintiff, in addition to misrepresenting the briefs and making frivolous arguments in the instant briefing, has twice had her claims before this Court dismissed pursuant to 28 U.S.C. § 1915(e)(2). *Peña v. Garza*, No. 1:25-CV-1327-DAE, 2025 WL 3647554, at *1 (W.D. Tex. Dec. 15, 2025); *Peña v. City of Austin*, No. 1:25-CV-01067-ADA-DH, 2025 WL 3018748, at *1 (W.D. Tex. Oct. 28, 2025). A claim is frivolous when it "lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.

1997). Plaintiff is warned that future filings of frivolous legal claims or arguments may lead the Court to issue sanctions.

## III. CONCLUSION

For these reasons, **IT IS ORDERED** that the Motions to Dismiss, (Dkts. 13, 25, 26), are **GRANTED** as follows. The Fair Housing Act claim in Plaintiff's Complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction as to Defendants HACA and Heale in his official capacity and **DISMISSED WITH PREJUDICE** as to all other Defendants. Plaintiff's Americans with Disabilities Act and Rehabilitation Act claims are **DISMISSED WITH PREJUDICE** as to all Defendants. The individual capacity claims against Defendant Heale are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claim is **DISMISSED WITHOUT PREJUDICE**.[10]

**IT IS FINALLY ORDERED** that Defendants' Motion to Strike, or Alternatively, to Disregard, (Dkt. 35), is **GRANTED IN PART**, to the extent that the Court has reviewed Plaintiff's complaint for legal plausibility as set forth above and has disregarded the inapplicable authorities she cited, as set forth in Defendants' Motion, (Dkt. 35), and is otherwise **DENIED**.

**SIGNED** on August 4, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

[10] Plaintiff asks the Court to grant her leave to amend rather than dismiss her claims but provides no basis for the Court to allow her to amend her Complaint, other than to cite her pro se status. (Resp., Dkt. 16, at 26). While requests for leave to amend are construed liberally, courts need not afford a pro se plaintiff an opportunity to amend if "he has already pleaded his best case." *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020) (internal quotation marks and citation omitted). Here, Plaintiff "gives no indication that [s]he did not plead [her] best case in these filings; [s]he does not explain what an amendment would have contained; and [s]he does not state any issues that the amendment would have raised." *Id.* Further, Plaintiff filed extensive attachments to her Complaint, and the Court's review of them does not alter its conclusion. As such, the Court will not grant leave to amend.